# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT SCOTT SCUBA, et al.,                Case No. 1:06-cv-160
    Plaintiffs

    vs                                     (Dlott, J.; Hogan, M.J.)

REGINALD WILKINSON, et al.,                **REPORT AND**
    Defendants                             **RECOMMENDATION**


       Plaintiffs Robert Scott Scuba and John Robert Modie, inmates at the Lebanon

Correctional Institution (LeCI), bring this action pursuant to 42 U.S.C. § 1983 against former

Ohio Department of Rehabilitation and Correction (ODRC) Director Reginald Wilkinson, other

ODRC officials, and various officials at the Lebanon Correctional Institution.  This matter is

before the Court on defendants' motion for judgment on the pleadings (Doc. 72), plaintiffs'

memorandum in opposition thereto (Doc. 78), and defendants' reply memorandum. (Doc. 82).

       In determining a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c),

"all well-pleaded material allegations of the pleadings of the [non-movant] must be taken as

true." *U.S. v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993)(quoting *Lavado v. Keohane*, 992 F.2d

601, 605 (6thCir. 1993).  "The motion is granted when no material issue of fact exists and the

party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland

Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).  Where a Rule 12(b)(6) defense of

failure to state a claim upon which relief may be granted is raised by a Rule 12(c) motion for

judgment on the pleadings, the Court must apply the standard for a Rule 12(b)(6) motion.

*Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir. 1987).  "[A] Rule 12(c) motion is

designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice.  The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1367 (2005).

The amended complaint alleges the following:  Plaintiff Scuba was assigned to the kitchen maintenance department at LeCI between March 2003 and June 2005. (Doc. 37, ¶ 34). Plaintiff Modie was assigned to the kitchen maintenance department between January 2004 and June 2005. (Doc. 37, ¶ 37).  While working in the kitchen, they removed insulation from under the serving lines. (Doc. 37, ¶ 42).  Concerned about the content of the insulation, plaintiffs questioned LeCI employees whether the insulation contained asbestos or other material detrimental to their health. *Id.*  LeCI employees told plaintiffs the material was not asbestos. (Doc. 37, ¶ 42).

In March 2005 defendant Eckman, an LeCI employee, told plaintiffs the material was asbestos. (Doc. 37, ¶ 47).  Wanting to confirm the identity of the material, plaintiff Scuba sent a sample to the Environmental Protection Agency (EPA) in Washington, D.C. to be tested. (Doc. 37, ¶ 48).  Subsequently, plaintiffs were subjected to a "shakedown" and suffered retaliation. (Doc. 37, ¶¶ 50-54).  In May 2005, Plaintiff Scuba sent another sample of the questionable material to the Federal Bureau of Investigation (FBI) and to the EPA Office in

Chicago. (Doc. 37, ¶¶ 54-56).  The incident caused a hazmat incident and brought about the involvement of the U.S. Department of Homeland Security, whose agent contacted the institution and interviewed Plaintiff Scuba. (Doc. 37, ¶¶58, 59, 62).  The sample mailed to the EPA in Chicago, however, was allegedly switched by defendants Rick Timler acting in concert with defendants Moore, Link, Case, Casey Barr, and Ed Timler and replaced with a white powder. (Doc. 37, ¶ 60).  Additional samples were mailed by plaintiffs and other inmates at the request of plaintiffs to other individuals outside of the prison, including Attorney Ray Smith. (Doc. 37, ¶¶63, 64, 67).

An additional fraudulent disciplinary ticket was composed by some of the defendants in an effort to raise plaintiffs' security clearance to justify a transfer to the Southern Ohio Correctional Facility in Lucasville, Ohio.  Both plaintiffs were placed in security control, while other LeCI inmates were ordered to strip, scrub and paint the kitchen maintenance room to conceal the asbestos. (Doc. 37, ¶¶ 70-72).  Both plaintiffs were found guilty of possessing contraband and released from security control. (Doc. 37, ¶¶77-78).  In July 2005, plaintiffs received confirmation that the substance was indeed asbestos.  Attorney Ray Smith, to whom a sample of insulation was sent, allegedly sent a sample of insulation to Data Chem Laboratories, Inc. for testing. (Doc. 37, ¶80).

Plaintiff Scuba filed a grievance and referenced the document from Data Chem confirming the finding of asbestos.  Defendant Casey Barr requested a copy of said confirmation, which plaintiff Scuba supplied. (Doc. 37, ¶81).  Plaintiffs were subsequently questioned by several of the defendants about the document.  The defendants allegedly denied any knowledge of the asbestos. (Doc. 37, ¶82).  Plaintiff Scuba then received information from a fellow inmate,

a "licensed and certified asbestos abatement worker for the state of Ohio," who stated that during his time with the abatement team he worked directing for defendant Wilkinson who was aware that the abatement of asbestos from LeCI was never completed. (Doc. 37, ¶83).

Plaintiff Modie appealed his RIB ticket and on August 3, 2005, the conviction was overturned. (Doc. 37, ¶85).  Modie's job was then reinstated.

Plaintiff Scuba filed an informal complaint with defendant Timler on August 2, 2005 concerning the discovery of asbestos in the kitchen/maintenance area and his placement in security control. (Doc. 37, ¶86).  On August 4, 2005, Scuba after being summoned to the captains office and meeting with defendants Turner, Ortberg, Timler and Jones, withdrew the informal complaint under threats of continued confinement in security control. (Doc. 37, ¶87). The following morning, plaintiff met with defendant Casey Barr, informed him of the threats and intimidation by the corrections officers, and agreed to submit to a lie detector test. (Doc. 37, ¶88).  Barr informed plaintiff he would investigate. *Id*.

Later that evening, plaintiff Scuba was removed from his cell and taken to protective custody, allegedly by order of defendant Callahan, a Trooper with the Ohio State Highway Patrol, as a result of  a phone call to the Ohio State Highway Patrol from a member of Scuba's family, Mr. Dave Dudas. (Doc. 37, ¶ 89).  On August 8, 2005, plaintiff Scuba was taken to an office where defendant Callahan obtained a statement from Scuba about the alleged asbestos in the kitchen and the withdrawal of his grievance. (Doc. 37, ¶91).  During the statement, defendant Callahan refused to allow Scuba to retrieve notes from his cell. *Id.*  Plaintiffs allege that defendant Callahan interviewed some of the named defendants and another inmate. (Doc. 37, ¶¶ 94-95).  Plaintiffs allege that they complained verbally and in writing to defendant Callahan

4

"alleging criminal and malicious conduct on behalf of the defendants named in the instant complaint" and that Callahan failed to investigate such complaints and conspired with the other defendants to conceal the civil rights violations of the plaintiffs. (Doc. 37, ¶120(b)).

Plaintiffs further allege that on September 8, 2005, plaintiff Modie was again removed from his job based on an allegedly false work evaluation and in retaliation for his previous complaints. (Doc. 37, ¶99).

Plaintiffs subsequently filed a complaint with the Environmental Protection Agency in Washington, D.C. (Doc. 37, ¶101). This complaint was forwarded to defendant Thomas P. Charles, the Ohio Inspector General. *Id.* The amended complaint alleges that defendant Charles "entered into [a] conspiracy to conceal civil rights violations by failing to investigate and/or perform statutory duties. . . ." (Doc. 37, ¶102). The amended complaint further alleges that defendant Charles, "in furtherance, acting in concert with defendants . . . have deliberately, with malice and bad faith intentionally failed to investigate for fear of possible criminal charges against the defendants in the instant complaint, i.e., they are looking out for their own." (Doc. 37, ¶103).[1]

Plaintiffs allege the foregoing actions violated their First, Eighth, and Fourteenth Amendment rights to the United States Constitution. Defendants seek judgment on the pleadings, contending the amended complaint fails to state a claim on which relief can be granted. For the reasons that follow, the undersigned recommends that defendants' motion be granted in part and denied in part.

---

[1]Defendants Charles and Callahan have been dismissed from this lawsuit. See Docs. 50, 56.

5

**Law of the Case Doctrine/Res Judicata**

As an initial matter, the Court disagrees with plaintiffs' argument that defendants' motion

must be denied on the basis of the law of the case doctrine and/or res judicata because this Court

in its screening order pursuant to 28 U.S.C. § 1915(a)(2)(B) has already determined that

plaintiffs' complaint states a claim for relief against the defendants. (See Doc. 5).  The Sixth

Circuit has stated:

> "At the trial court level, the doctrine of the law of the case is little more than a
> management practice to permit logical progression toward judgment. Prejudgment
> orders remain interlocutory and can be reconsidered at any time." *Id.* (quoting 1b
> James Wm. Moore et al., *Moore's Federal Practice* ¶ 0.401 (2d ed.1994)). The
> law-of-the-case doctrine does not remove a district court's jurisdiction to
> reconsider, or otherwise preclude a district court from reconsidering, an issue
> previously decided in the case. *Id.* at 590.

*U.S. v. Dunbar*, 357 F.3d 582, 592 -593 (6th Cir. 2004) (quoting *Gillig v. Advanced*

*Cardiovascular Sys.,* 67 F.3d 586, 589 (6th Cir. 1995), *vacated on other grounds,* 543 U.S. 1099

(2005).

This Court's screening order states:

> Plaintiffs' complaint, liberally construed, alleges that after they discovered and
> complained about asbestos in the food preparation area of the prison kitchen
> where both plaintiffs Scuba and Modie worked, they were retaliated against.
> Such retaliation included being charged with false conduct reports, subjected to
> unwarranted criminal charges, terminated from their jobs, and placed in security
> control segregation.  The complaint also alleges that prison officials were
> deliberately indifferent to their health and safety by knowingly exposing plaintiffs
> to asbestos.  Plaintiffs seek injunctive and monetary relief.  Since it does not
> appear beyond doubt that plaintiffs can prove no set of facts in support of their
> claims, plaintiffs' complaint  shall be permitted to proceed.

(Doc. 5 at 2).  While the undersigned's screening order permitted plaintiffs' complaint to

proceed, the Court did not analyze plaintiffs' individual claims in light of the arguments now

made by defendants in their motion.  Such a review is appropriate at this juncture to clarify and

6

narrow the issues in this case.  Therefore, the Court should not deny defendants' motion on the basis of the law of the case doctrine/res judicata.

**Defendant Wilkinson**

Defendant Reginald Wilkinson moves for judgment on the pleadings contending that plaintiffs' complaint fails to state any facts indicating defendant Wilkinson has had any personal involvement in the alleged constitutional violations.  Plaintiffs cite to paragraphs 33a and 83 of the amended complaint, contending that "Defendant Wilkinson misappropriated (or perhaps even stole) the money that was appropriated from the federal government for the express purpose of removing the friable asbestos from the Lebanon Corr. Inst. which was directly causative of the asbestos exposure." (Doc. 78 at 4).  Paragraph 83 of the amended complaint references the affidavit of Jason Staley, an inmate, which allegedly states that "during his time on the abatement team, he worked directly for defendant Wilkinson" and "Wilkinson knew Lebanon Correctional was never completed." (Doc. 37, ¶83, citing to Exhibit O, Affidavit of Jason Staley).

The Court has reviewed the Affidavit of Jason Staley which is attached to plaintiffs' original complaint.  Plaintiffs have failed to accurately characterize the substance of Mr. Staley's affidavit.  The affidavit makes no representations about Mr. Wilkinson and offers no facts to support plaintiffs' claim that defendant Wilkinson misappropriated funds intended for asbestos abatement or was otherwise deliberately indifferent to their health or safety.  Plaintiffs have failed to allege specific facts showing defendant Wilkinson authorized, approved or knowingly acquiesced in the unconstitutional conduct alleged in the amended complaint.  In reality,

plaintiffs' claim against defendant Wilkinson is based on a theory of respondeat superior which cannot support a claim of liability under Section 1983. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984). Therefore, defendants' motion for judgment on the pleadings as to defendant Wilkinson should be granted.

**State law claims**

Defendants also seek to dismiss claims that arise under the state law of Ohio. Plaintiffs deny they are bringing any state law claims in this action. (Doc. 78 at 4). Therefore, defendants' motion for judgment on the pleadings on plaintiffs' state law claims should be denied as moot.

**Defendants April Barr and Casey Barr**

Defendant Casey Barr is the institutional investigator of LeCI and is responsible for conducting investigations of misconduct. (Doc. 37, ¶13). Defendant April Barr is the institutional inspector at LeCI. She is responsible for investigating and processing inmate grievances. (Doc. 37, ¶15). Defendants contend that the complaint fails to state a claim for relief against these defendants.

To the extent plaintiffs complain that defendants Casey and April Barr failed to properly investigate or respond to their complaints and/or grievances, plaintiffs' complaint fails to state a claim for relief for a denial of due process because plaintiffs have no constitutional right to an effective grievance procedure. *See Argue v. Hofmeyer,* 80 Fed. Appx. 427, 430 (6th Cir. 2003)(unpublished), 2003 WL 22495834, **2-**3, citing *Hewitt v. Helms,* 459 U.S. 460, 467

8

(1983); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994). *See also Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335 (6th Cir. 2000) (unpublished), 2000 W.L. 799760, at *3 (no inherent constitutional right to an effective prison grievance procedure). Therefore, plaintiffs' due process claims based upon an alleged failure to investigate or respond should be dismissed.

However, to the extent plaintiffs allege that defendants Casey Barr and April Barr acted with others to conceal plaintiffs' alleged exposure to asbestos products and participated in alleged retaliation against plaintiffs for their grievances and complaints about such exposure, the Court cannot say that plaintiffs' complaint sets forth no facts in support of these claims such that the claims should be dismissed. (Doc. 37, ¶¶60, 66, 68, 71, 81-82, 88, 91-94, 96). Rather, the Court believes such claims should be addressed and disposed of on summary judgment or at a trial on the merits. Defendants' motion should be denied in this regard.


**Actual Injury**

Defendants argue that plaintiffs have failed to show actual and direct injury and therefore are without Article III standing in this case. The Court disagrees. Plaintiffs' amended complaint alleges they have personally been exposed to asbestos products, that defendants knew of such exposure yet failed to take action to abate the alleged harm, and that plaintiffs suffered retaliation in numerous forms as a result of their complaints and grievances about the exposure. Plaintiffs have alleged direct and concrete injuries as a result of the challenged conduct by defendants and have standing to pursue this matter. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

**Defendants Ernie Moore, Gary Link, Major Crutchfield**

Defendants next argue that the amended complaint offers no factual statement showing any direct involvement by defendants Moore, Link or Crutchfield in any claimed constitutional deprivation and should be dismissed as to these defendants.

Defendants contend that plaintiffs have improperly based several claims "on information and belief." *See, e.g.*, Doc. 37, ¶¶60, 66, 95. However, defendants have not cited any authority indicating the Court must ignore factual allegations stated on information and belief. In addition, defendants object to plaintiffs' allegations that these defendants "directly/indirectly" supervised others and conspired to retaliate and conceal plaintiffs' exposure to asbestos.

At this juncture, the Court must construe plaintiffs' pro se amended complaint liberally and accept all of the factual allegations as true when determining whether those allegations form a claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Smith v. City of Salem*, 378 F.3d 566, 568 (6th Cir. 2004); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). In addition, the amended complaint is construed and held to less stringent standards as compared with formal pleadings drafted by attorneys. *Estelle*, 429 U.S. at 106; *Haines*, 404 U.S. at 520. While the complaint does not separately set forth facts on which plaintiffs' allegations of information and belief are based, there are facts appearing throughout the complaint which do provide a sufficient basis to so plead or from which such an inference may be made. The facts alleged are specific enough to put the defendants on notice of the specific occurrences giving rise to the claims against them. No more is required. *See Jordan v. Global Natural Resources, Inc.*, 564 F. Supp. 59, 68-69 (S.D. Ohio) (Spiegel, J). If plaintiffs' claims are baseless, that conclusion will come out on discovery. The Court anticipates that the

10

claims against these defendants will be fully briefed upon a motion for summary judgment so that all legal issues may be disposed of prior to trial.   Thus, the Court cannot find "beyond doubt that plaintiff can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley*, 355 U.S. at 45-46.  Defendants' motion for judgment on the pleadings on plaintiffs' claims against defendants Moore, Link, and Crutchfield should be denied.


**Lack of due process in disciplinary actions**

Defendants seek dismissal of the amended complaint to the extent plaintiffs allege they were deprived of due process in connection with the unwarranted disciplinary actions taken against them.

Defendants' motion is well-taken in this regard.  A prison disciplinary proceeding does not give rise to a protected Fourteenth Amendment liberty interest unless it affects the duration of the prisoner's confinement, or the restrictions impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997), *cert. denied*,  118 S.Ct. 136 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995).  Plaintiffs' placements in security control and protective control did not result in the lengthening of their prison sentences, the withdrawal of good-time credits, or the deprivation of any necessities of life.  Nor did such placements rise to the level of an atypical and significant hardship. *Sandin*, 515 U.S. at 486; *Smith v. Corrections Corp. of America*, 5 Fed. Appx. 443, 444, 2001 W.L. 223873, **1 (6th Cir. 2001)(unpublished)(thirty days of disciplinary segregation does not rise to level of atypical and significant hardship).  *See also Jones*, 155 F.3d at 812 (6th

Cir. 1998)(administrative segregation for two and a half years did not satisfy *Sandin*); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997)(administrative confinement for 117 days for lack of bed space could not satisfy *Sandin*); *Collmar v. Wilkinson*, 187 F.3d 635 (6th Cir. 1999) (unpublished), 1999 W.L. 623708 (30 days in Security Control, 14 days in  Disciplinary Control and six to eight months in Administrative Control were not atypical hardship under *Sandin*).  *Cf. Wilkinson v. Austin*, 125 S.Ct. 2384, 2394-95 (2005) (holding that transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).  Moreover, "[f]alse accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing." *Cromer v. Dominguez*, 103 Fed. Appx. 570, *573, 2004 WL 1447648, **2 (6th Cir. 2004) (citing *Cale v. Johnson*, 861 F.2d 943, 953 (6th Cir. 1988) (Nelson, J., concurring); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).  Because plaintiffs were provided due process hearings on the allegedly false misconduct charges, their constitutional rights to due process were not violated and they may not maintain a § 1983  claim based on such allegations.  Accordingly, plaintiffs do not have a protected liberty interest under the circumstances alleged and their amended complaint fails to state a due process claim.

## Section 1985 conspiracy claims

To the extent plaintiffs' amended complaint alleges claims for conspiracy under 42 U.S.C. § 1985(2) and (3), their allegations fail to state a claim for relief against the defendants.

Section 1985 generally prohibits conspiracies to interfere with an individual's civil rights.  To state a claim for relief under § 1985(3), plaintiffs must show: 1) a conspiracy between at least two persons; 2) that the object of the conspiracy was to deprive plaintiffs of equal protection of the law or of privileges and immunities under the law; 3) an act by at least one conspirator in furtherance of the objective; and 4) injury to plaintiffs as a result of the conspiracy. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).  Plaintiffs must also show that there is some racial or otherwise class-based invidiously discriminatory animus involved in the defendant's actions. *Id*. at 102.  *See also Haverstick Enterprises v. Financial Federal Credit,* 32 F.3d 989, 994 (6th Cir. 1994), citing *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829 (1983).  Likewise, the second clause of § 1985(2)[2], which prohibits private conspiracies to obstruct "the due course of justice in any State or Territory" with the intent of depriving persons of equal protection of the laws, also requires that the conspirator's actions be motivated by race or class-based animus. *Bennett v. Batchik,* 936 F.2d 572 (6th Cir. 1991) (unpublished), 1991 W.L. 110385, citing *Kush v. Rutledge,* 460 U.S. 719, 725 (1983).

Plaintiffs' complaint fails to allege facts showing the alleged conspiracy was motivated by "some racial or perhaps otherwise class-based, invidiously discriminatory animus" in order to state a claim for relief under either § 1985(3) or § 1985(2). *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000), quoting *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 829 (1983).  *See also Ellison v. Leffler*, 30 F.3d 133, 1994 W.L. 276926, **2 (6th Cir. 1994), citing *Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *Bennett v.*

---

[2]        The first clause of § 1985(2) relates to conspiracies to interfere with the administration of justice in the federal courts, and is clearly inapplicable to this case.  *See Willing v. Lake Orion Community Schools Bd. of Trustees*, 924 F. Supp. 815, 819  (E.D. Mich. 1996).

*Batchik*, No. 90-2036, 1991 W.L. 110385, at *6 (6th Cir. 1991). Prisoners are not a protected

class for the purposes of § 1985. *See Rose v. Leaver*, No. 01-3881, 2002 W.L. 1001028, at *2

(6th Cir. May 15, 2002), citing *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990). Since

plaintiffs do not allege that the defendants' actions were motivated by race or class-based

animus, their amended complaint fails to state a claim for relief under sections 1985(2) or (3).


**Work assignments**

Defendants contend that plaintiffs have no right to any particular inmate jobs within the

prison and that the amended complaint fails to state a claim for relief to the extent plaintiffs

complain about their work reassignments. The Court agrees.

The loss of a prison job does not trigger due process protections because prisoners have

no protected liberty interest in prison employment. *Newsom v. Norris*, 888 F.2d 371, 374 (6th

Cir. 1989). Prisoners simply have no constitutional right to prison employment or to a particular

prison job. *Id. See also see McKinley v. Bowlen*, No. 00-6344, 2001 WL 493394 at *2 (6th Cir.

May 1, 2001). Therefore, plaintiffs' claims in this regard should be dismissed.


**Retaliation**

Prison officials may not retaliate against inmates who have engaged in constitutionally

protected activities or conduct. *See Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429

U.S. 274, 287 (1977); *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988). To state a claim for

retaliation, plaintiffs must allege facts showing: (1) they engaged in protected conduct; (2) an

14

adverse action was taken against them that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two, that is, the adverse action was motivated at least in part by plaintiffs' protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Defendants argue that plaintiffs' amended complaint fails to state a claim for relief for retaliation under the First Amendment. They argue that plaintiffs cannot show their acts of taking insulation material from the prison and mailing it out constituted protected conduct; that any adverse action deterred them or had a chilling effect on their grievance or litigation activities since plaintiffs have continued to pursue their grievances and lawsuits; or that there is any nexus between their protected conduct and any adverse action taken.  The Court finds defendants' motion not well-taken.

The protected conduct in this case is not the mailing of asbestos materials, but rather the complaints and grievances filed by plaintiffs about asbestos exposure.  It is undisputed that the filing of a prison grievance by an inmate is protected conduct.  *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).  Plaintiffs  have plead facts showing the first element of their retaliation claim. *See Thaddeus-X*, 175 F.3d at 394.

With respect to the second element of "adverse action," plaintiffs' amended complaint alleges that in retaliation for their grievances and complaints, they were subjected to retaliatory shakedowns, charged with false conduct reports, subjected to unwarranted criminal charges, terminated from their jobs, and placed in security control segregation.  Such actions are sufficiently adverse for purposes of plaintiffs' retaliation claim.  *See Thaddeus-X*, 175 F.3d at 398-99 (harassment, physical threats, cold meals, and transfer to the area of a prison used to

15

house mentally disturbed inmates, especially combined with the unsanitary conditions there,

likely to have a strong deterrent effect).  *See also Scott v. Churchill*, 377 F.3d 565, 570-71 (6th

Cir. 2004) (issuance of a false major misconduct ticket constitutes adverse action); *Bell v.

Johnson*, 308 F.3d 594, 605 (6th Cir. 2002) (two shakedowns of plaintiff's cell and the

concomitant confiscation of legal papers and medical diet snacks constituted adverse actions);

*Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000) (placing  inmate in administrative

segregation was conduct sufficiently adverse).  Defendants do not argue that these actions do not

constitute adverse actions, but rather that such actions did not deter plaintiffs from continuing to

pursue grievances and lawsuits.  This precise issue was addressed by the Sixth Circuit as

follows:

> Defendants further argue that Bell cannot prove that their actions were sufficient
> to deter protected conduct, given that Bell himself was not deterred from
> persisting in this lawsuit. *Thaddeus-X* makes clear, however, that the adverseness
> inquiry is an objective one, and does not depend upon how the particular plaintiff
> reacted. 175 F.3d at 398; *accord Sanders v. St. Louis County*, 724 F.2d 665, 666
> (8th Cir. 1983) ("It is not necessary that the inmate succumb entirely or even
> partially to the threat so long as the ... retaliatory act was intended to limit the
> inmate's right of access [to the courts]."). The relevant question is whether the
> defendants' actions are "*capable* of deterring a person of ordinary firmness;"
> there is no requirement that the plaintiff show actual deterrence. *Thaddeus-X*, 175
> F.3d at 398 (emphasis added).  Defendants' argument would effectively foreclose
> all retaliation claims, since the fact that a claim was before the court would be
> conclusive proof that the plaintiff was not deterred. We emphasize again that the
> "ordinary firmness" standard is "intended to weed out only inconsequential
> actions." *Id*. The factual question is whether the injury inflicted is so slight that it
> could not reasonably be expected to deter protected conduct. The standard is not
> intended to foreclose relief to all but the superfirm plaintiffs, who are willing and
> able to persist in their suits in the face of retaliatory actions that would cause most
> plaintiffs to crumple. Rather, the purpose of the standard is to avoid trivializing
> the First Amendment by eliminating suits based upon insignificant acts of
> retaliation. *See Bart*, 677 F.2d at 625 ("It would trivialize the First Amendment to
> hold that ... if the Mayor of Springfield had frowned at Miss Bart for running for
> public office he would be liable for damages ....").

> In sum, we conclude that Bell's evidence is sufficient to demonstrate that the claimed retaliatory acts were not merely de minimis acts of harassment.

*Bell*, 308 F.3d at 606. The standard for "adverse action" is an objective one. It is irrelevant whether plaintiffs themselves were deterred from filing grievances because of the adverse actions alleged. The Court therefore rejects defendants' argument and finds that plaintiffs' amended complaint satisfies the second element of *Thaddeus-X.*

Finally, plaintiffs' amended complaint satisfies the third element of *Thaddeus-X.* Plaintiffs may meet the causation requirement by pointing to circumstantial evidence such as "the timing of events or the disparate treatment of similarly situated individuals." *Thaddeus-X*, 175 F.3d at 399. *See also Hillside Productions, Inc. v. Duchane*, 249 F. Supp.2d 880, 898 (E.D. Mich. 2003) (plaintiff may allege a chronology of events from which retaliation may plausibly be inferred). Plaintiffs have alleged facts from which a causal connection may be inferred from their complaints and grievances and the  retaliatory actions which followed. Therefore, defendants' motion for judgment on the pleadings on plaintiffs' retaliation claim should be denied.

**Words are not actionable**

To the extent defendants argue that any alleged threats or unwelcome comments directed towards plaintiffs are not actionable under Section 1983, plaintiffs allege more than verbal threats and harassment. They allege that defendants acted on such threats in the form of unwarranted disciplinary action, for example, and that the inclusion of factual allegations regarding such threats were intended to clarify the facts surrounding their retaliation claim. Since plaintiffs do not allege an independent Section 1983 claim based on words or threats alone,

there is no basis for granting defendants' motion in this regard.

**Qualified immunity**

Government officials, including prison officials, "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Black v. Parke*, 4 F.3d 442, 444 (6th Cir. 1993), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a three pronged analysis. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).  *See also Sample v. Bailey*, 409 F.3d 689, 696 n. 3 (6th Cir. 2005).  First, the Court must determine whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. *Id.  See Saucier,* 533 U.S. at 201.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. Second, the Court determines whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id.; Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691.  Third, the Court must examine  whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at

691.

A constitutional right is "clearly established," thereby precluding the application of

qualified immunity, if "the law [is] clear in regard to the official's particular actions in the

particular situation." *Black*, 4 F.3d at 445, quoting *Long v. Norris*, 929 F.2d 1111, 1114 (6th

Cir.), *cert. denied*, 112 S.Ct. 187 (1991).  *See also Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.),

*cert. denied*, 116 S.Ct. 524 (1995).  "This  inquiry, it is vital to note, must be undertaken in light

of the specific context of the case, not as a broad general proposition. . . ." *Saucier,* 533 U.S. at

201.  "The contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202, quoting *Anderson*

*v. Creighton*, 483 U.S. 635, 640 (1987).  "The relevant, dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable [official] that

his conduct was unlawful in the situation confronted." *Id.*

Defendants are not entitled to qualified immunity on plaintiffs' retaliation and deliberate

indifference to health or safety claims.  First, as discussed above, the facts viewed in the light

most favorable to the plaintiffs show that plaintiffs' amended complaint states a claim for relief

for retaliation.  In addition, plaintiffs' amended complaint states a claim for relief under the

Eighth Amendment for deliberate indifference to health and safety by knowingly exposing

plaintiffs to asbestos.[3]  Second, plaintiffs' right to be free from retaliation for grievances and

complaints was clearly established in 2005 when the alleged retaliation occurred in this case.

*See Scott v. Churchill*, 377 F.3d 565, 570-71 (6th Cir. 2004); *Bell v. Johnson*, 308 F.3d 594, 605

(6th Cir. 2002); *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000); *Thaddeus-X*, 175 F.3d at

---

[3]Defendants have not moved for judgment on the pleadings on this claim.

19

398-99.  Likewise, compelling a prisoner to perform unprotected removal of asbestos with full knowledge of the danger of asbestos constitutes deliberate indifference to well-being in violation of the Eighth Amendment. *Patton v. Bechtler,* 1993 WL 428683, *3 (6th Cir. 1993) (citing *Helling v. McKinney*, 509 U.S. 25, 33-37 (1993).  Third, plaintiffs have alleged sufficient facts indicating that the defendants' actions were objectively unreasonable in light of the clearly established constitutional rights. *Feathers,* 319 F.3d at 848.  Therefore, defendants are not entitled to qualified immunity.

**Vague and conclusory**

Defendants further argue that plaintiffs claims against them are vague and conclusory. For the reasons stated above, the Court finds that plaintiffs' amended complaint alleges sufficient facts to adequately apprise defendants of the retaliation and deliberate indifference to health and safety claims against them.  This contention is without merit.

**Improper Joinder**

Finally, defendants seek dismissal of the complaint on the basis of misjoinder of claims under Rule 20, Fed. R. Civ. P.  Defendants contend that the numerous allegations against them lack a connection aside from plaintiffs' conclusory allegations and that the joinder of the claims in one lawsuit is improper.  Defendants seek dismissal or, in the alternative, severance of the claims.

Defendants' request for dismissal on the basis of misjoinder should be denied.  Rule 21 of the Federal Rules provides:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.  Consequently, even if there is a misjoinder of parties in this action, dismissal of plaintiffs' amended complaint is not an appropriate remedy.

In any event, the Court finds the joinder of claims and parties in this action to be warranted.  Rule 20(a) sets forth the elements for permissive joinder of parties.  Permissive joinder of defendants requires: (1) the right to relief asserted must arise out of the same transaction, occurrence, or series of transactions or occurrences, and (2) a question of law or fact common to all defendants will arise in the action.  *See* Fed. R. Civ. Proc. 20(a).  The joinder provisions of the Federal Rules are very liberal.  As the Supreme Court noted in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." 383 U.S. at 724 (footnote omitted).  The transaction and common question requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. *Swan v. Ray,* 293 F.3d 1252, 1253 (11th Cir. 2002).

Here, plaintiffs' claims against each defendant stem from allegations concerning the discovery and removal of asbestos from LeCI by plaintiffs, their subsequent complaints and grievances about their safety and health concerns, and the alleged retaliation that occurred as a result of such complaints.   Their claims involve common legal questions that arise out of the same series of events such that in the interest of judicial economy they should be included in a

21

single proceeding.  Defendants' request for severance should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants' motion for judgment on the pleadings be **GRANTED** with respect to:

      a.  All claims against defendant Reginald Wilkinson.

      b.   Plaintiffs' due process claims against defendants Casey Barr and April Barr based upon an alleged failure to investigate or respond.

      c.   Plaintiffs' claims they were deprived of due process in connection with the unwarranted disciplinary actions taken against them.

      d.  Plaintiffs' 42 U.S.C. § 1985 conspiracy claims.

      e.   Plaintiffs' claims challenging their work reassignments.

2.  Defendants' motion for judgment on the pleading be **DENIED** in all other respects.

Date:  __7/16/2007__                    _s/Timothy S. Hogan_____
                                       Timothy S. Hogan
                                       United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION


ROBERT SCOTT SCUBA, et al.,    Case No. 1:06-cv-160
   Plaintiffs

   vs          (Dlott, J.; Hogan, M.J.)

REGINALD WILKINSON, et al.,
   Defendants


### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☐ Agent ☐ Addressee

B. Received by ( *Printed Name* ) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Robert Scott Scuba
# 354-073
Lebanon Corr. Inst.
PO Box 56
Lebanon, OH 45036

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)*
7002 0860 0000 1409 6076

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☐ Agent ☐ Addressee

B. Received by ( *Printed Name* ) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

John Robert Modie
#460255
Lebanon Corr. Inst.
PO Box 56
Lebanon OH 45036

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)*
7002 0860 0000 1409 6083

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

1:06cv160 Doc. 83 + 84