# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT SCOTT SCUBA, et al.,  
      Plaintiffs

  vs

REGINALD WILKINSON, et al.,  
      Defendants

Case No. 1:06-cv-160  
Dlott, J.  
Hogan, M.J.

**REPORT AND**  
**RECOMMENDATION**

     Plaintiffs Robert Scott Scuba and John Robert Modie are former inmates at the Lebanon

Correctional Institution (LeCI). They filed this action pro se against Ohio Inspector General

Thomas P. Charles, Ohio State Highway Patrol Trooper Tracey Callahan, and various officials at

the Lebanon Correctional Institution and the Ohio Department of Rehabilitation and Correction

(ODRC) alleging a violation of their constitutional rights under 42 U.S.C. § 1983. The

remaining defendants in this case are Lebanon Correctional Institution employees Ron Hart,

George Crutchfield, Casey Barr, Chris Case, April Barr, Malcolm Heard, Mitch Turner, Kent

Ortberg, Rick Timler, Ed Timler, Ernie Nichols, John Buckhalter, C/O Brown, Molly Dow,

Clyde Gentry, Cindy Conn, Billy Hubbell, Mark Eckman, Marty Westall, Mike Jones, Ernie

Moore, Ellen Myers, and Gary Link.[1] Plaintiffs allege they were exposed to asbestos while

working at the LeCI kitchen, that defendants knew of such exposure but failed to take action to

abate the harm resulting from such exposure, and that they suffered retaliation as a result of their

---

[1]The following defendants were previously dismissed from this case: Ohio Inspector General Thomas P. Charles (Doc. 56), Ohio State Highway Patrol Trooper Tracey Callahan (Doc. 56), John and Jane Does (Doc. 62), former ODRC Director Reginald Wilkinson (Doc. 96), and Gerald LaForge. (Doc. 161).

complaints and grievances about the exposure.[2]

This matter is before the Court on defendants' motion for summary judgment (Doc. 128), plaintiffs' memoranda in opposition to the motion for summary judgment (Docs. 142, 146)[3], and defendants' reply memorandum. (Doc. 152).

## I. Facts

Plaintiffs, through their verified amended complaint[4] and attachments to their response to the motion for summary judgment, assert the following facts: Plaintiff Scuba was assigned to the kitchen maintenance department at LeCI between March 2003 and June 2005. (Doc. 37, ¶ 34). Plaintiff Modie was assigned to the kitchen maintenance department between January 2004 and June 2005. (Doc. 37, ¶ 37). Beginning in January 2004, and as part of their kitchen duties, plaintiffs periodically extracted and/or replaced insulation from under the serving lines. (Doc. 37, ¶ 42). Concerned about the content of the insulation, plaintiffs questioned defendants Ed Timler, Hart, and Brown whether the insulation contained asbestos or other material detrimental to their health. *Id.* Defendants Timler, Hart, and Brown told plaintiffs the material was not asbestos. (Doc. 37, ¶ 42).

---

[2]The following claims were previously dismissed from this case: plaintiffs' due process claims against defendants Casey Barr and April Barr, plaintiffs' due process claims concerning allegedly unwarranted disciplinary actions, plaintiffs' 42 U.S.C. § 1985 conspiracy claims, and plaintiffs' claims challenging their work reassignments. (Doc. 96).

[3]Document 146 is identical to document 142 except document 146 omits the attachments to document 142.

[4]Plaintiff's verified amended complaint, signed under penalty of perjury pursuant to 28 U.S.C. § 1746, has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *El Bey v. Roop,* 530 F.3d 407, 414 (6th Cir. 2008); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). The Court has omitted from plaintiffs' statement of the facts those allegations relating to defendants or claims previously dismissed by the Court, those facts "alleged on information and belief" (Doc. 37, ¶128), statements made by non-defendants which constitute inadmissible hearsay (*see, e.g.*, Doc. 37, ¶¶92, 95), and "facts" over which plaintiffs have no first-hand knowledge. *See, e.g.*, Doc. 37, ¶¶ 93, 94, 98). *See* Fed. R. Civ. P. 56(e)(1).

In March 2005 defendant Eckman told plaintiff Modie the material was asbestos. (Doc. 37, ¶ 47). Wanting to confirm the identity of the material, plaintiff Scuba removed a piece of the insulation and sent a sample to the Environmental Protection Agency (EPA) in Washington, D.C. to be tested. (Doc. 37, ¶ 48).

One week later, defendants Gentry and Conn arrived at the kitchen and ordered plaintiffs to step out of the maintenance room. Defendants Gentry and Conn proceeded to discard parts, accessories, and equipment necessary to the food service. Plaintiffs informed the defendants that the panels they were about to dispose of were needed to utilize as templates to manufacture new ones. Defendant Conn threatened to send plaintiffs to "security control" if they did not "shut up and go wait in the kitchen." (Doc. 37, ¶49). As a result of the "shakedown," defendants Gentry and Conn wrote an incident report for contraband and forwarded it to defendant Buckhalter. Defendant Buckhalter interviewed plaintiffs the following day, determined the incident report was without merit, and discarded the incident report. (Doc. 37, ¶51-54).

Plaintiff Scuba sent another sample of the questionable material to the Federal Bureau of Investigation (FBI) and to the EPA Office in Chicago. (Doc. 37, ¶¶ 54-56). The mailing caused a hazmat incident and brought about the involvement of the U.S. Department of Homeland Security, whose agent contacted the institution and interviewed plaintiff Scuba on June 3, 2005. (Doc. 37, ¶¶58, 59, 62).

Additional samples were mailed to other individuals outside of the prison, including Attorney Ray Smith, by other inmates at the direction of plaintiffs. (Doc. 37, ¶¶63, 64, 67).

On June 24, 2005, both plaintiffs were placed in security control for an investigation into alleged contraband found in the kitchen. Defendant Timler ordered other inmates to strip, scrub

and paint the kitchen maintenance room. (Doc. 37, ¶¶ 70-72). Plaintiffs were later interviewed by defendant Buckhalter and charged with possessing contraband, to wit, a circuit board. (Doc. 37, ¶77). Plaintiff Scuba entered a plea of guilty "being it was a minor offense and he could pretty much count on being released the next day or so." *Id.* He was released from security control the following day. *Id.* Plaintiff Modie appeared before the Rules Infraction Board and entered a plea of not guilty. He was found guilty by the RIB and released the next day. (Doc. 37, ¶78; Doc. 4, Exh. U).

In July 2005, plaintiffs received confirmation from Attorney Ray Smith, to whom a sample of insulation was sent, that the substance was indeed asbestos. (Doc. 37, ¶80).

Plaintiff Scuba filed a grievance and referenced the document from Data Chem confirming the finding of asbestos. Defendant Casey Barr requested a copy of the Data Chem document which plaintiff Scuba then gave him. (Doc. 37, ¶81). Plaintiff Modie was questioned by defendants Link, Hart, Westall, and April Barr about the document on July 26, 2005. The defendants denied any knowledge of the asbestos and asked Modie not to say anything. (Doc. 37, ¶82).

Plaintiff Modie appealed his RIB ticket and on August 3, 2005, defendant Myers reversed the conviction. Modie's kitchen job was then reinstated. (Doc. 37, ¶85).

Plaintiff Scuba filed a complaint/grievance with defendant Timler on August 2, 2005 concerning the discovery of asbestos in the kitchen/maintenance area and his placement in security control. (Doc. 37, ¶86). On August 4, 2005, Scuba was summoned to the captain's office and met with defendants Turner, Ortberg, Timler and Jones. Timler stated that Scuba would not go to the hole if he voluntarily withdrew his complaint. (Doc. 142, Scuba Aff. of Aug.

10, 2005)[5].  Scuba withdrew his grievance "due to the [interferon] treatment he was on, and

could not endure another week in security control." (Doc. 37, ¶87; Doc. 142, Scuba Aff. of Aug.

10, 2005).  The following morning, plaintiff met with defendant Casey Barr, informed him of the

threats and intimidation by the corrections officers, and agreed to submit to a lie detector test.

(Doc. 37, ¶88).  Barr informed plaintiff he would investigate. *Id.*  Later that evening, plaintiff

Scuba was removed from his cell and taken to protective custody. (Doc. 37, ¶ 89).

On August 8, 2005, plaintiff Scuba was taken by defendant Casey Barr to an office where

defendant Callahan obtained a statement from Scuba about the alleged asbestos in the kitchen

and the withdrawal of his grievance. (Doc. 37, ¶91).  Barr admitted he did not investigate

plaintiff Scuba's allegations. *Id.*  Plaintiff was then released to the general population. *Id.*

On August 20, 2005, plaintiff Scuba filed an RIB appeal accompanied by a grievance

with defendant Myers. (Doc. 37, ¶97).  His appeal was denied as untimely. (Doc. 4, Exh. H-5).

On September 8, 2005, plaintiff Modie was removed from his job based on an

unfavorable work evaluation. (Doc. 37, ¶99; Doc. 142, Inmate Evaluation Report).

Defendants submit the Declaration of Marty Westall, superintendent of maintenance at

LeCI.  Mr. Westall's Declaration[6] states:

> 3.  As part of my job duties, I have received and completed "Asbestos Awareness
> Training" in 2001 from the Public Employee Risk Reduction Program.  In the
> course of that training, I learned that asbestos in a solid, encased, undisturbed
> form is called "nonfriable" asbestos and asbestos in this nonfriable form poses no
> health threat.  Asbestos becomes hazardous when its solid form is disturbed, and

---

[5]Contrary to defendants' argument, defendant Timler's statement is not hearsay because it constitutes an admission by a party-opponent.  *See* Fed. R. Evid. 801(d)(2)(2).

[6]Mr. Westall's Declaration is signed under penalty of perjury pursuant to 28 U.S.C. § 1746.  Therefore, the declaration has the same force and effect as an affidavit and plaintiffs' objection that it is "unsworn" and "self-serving" is without merit.

particles are then released into the atmosphere; this hazardous form is called "friable" asbestos.

4. Robert Scott Scuba and John Robert Modie, the Plaintiffs in this case, are inmates sentenced to the custody and control of the Ohio Department of Rehabilitation and Corrections ("ODRC"). Scuba is incarcerated for aggravated robbery and felonious assault, while Modie is incarcerated for murder, robbery and escape. At all times relevant to the complaint, both were incarcerated at the Lebanon Correctional Institution ("LeCI"), a Level 3 or "close" security institution. The classification level higher than level 3 is level 4 or "maximum" security. Since filing the complaint in this case, Scuba and Modie have been transferred to different ODRC prisons and are no longer incarcerated at LeCI.

5. During 2005, Plaintiffs were assigned to work in the kitchen area of LeCI. On June 24, 2005, both Plaintiffs were found to have stored numerous items of contraband in a room in the kitchen area near where they were assigned to work. These items of contraband would not have been allowed into the possession of inmates; they include metal and a paintbrush, batteries, wood sticks, chemicals, and a homemade screwdriver, all of which could be made into weapons.

6. LeCI regularly keeps records in the ordinary course of business with entries made at or near the time of their occurrence. As maintenance superintendent, I am one of the custodians of those records. Attachments A-1 through A-8 attached hereto are copies of business records maintained by LeCI. Attachments A-1 through A-4 are photographs of the items of contraband retrieved.

7. Both Plaintiffs received conduct reports for possession of contraband found in the room in the kitchen area. *See* Ohio Admin. Code §5120-9-06 (Rule 51). After receiving the conduct reports, both Plaintiffs were transferred to work assignments other than the kitchen area.

8. Without first bringing the matter to the attention of LeCI staff or asking permission, Plaintiffs took it upon themselves to chip away at some of the insulation material beneath the steam tables on the LeCI food serving line. LeCI had this material tested and, in August 2005, the material tested positive for asbestos. It should be noted, however, that prior to Plaintiffs disturbing the insulation beneath the serving line, it was contained in a sealed, encased cabinet and in a solid form, and thus constituted non-friable asbestos. Plaintiffs' act of chipping away the asbestos and removing portions of it had the effect of altering the asbestos from a non-friable state to a hazardous friable state.

9. Plaintiffs inserted the chipped away material from under the steam table into at least one letter and mailed it out of the institution, and this mailing caused a hazmat incident and the evacuation of a federal building in Chicago. This

incident brought about the involvement of the U.S. Department of Homeland Security, whose agent contacted LeCI.

10. Attachment A-5 is a photograph of the encased cabinet exterior of the steam table on the serving line. Within the cabinet is the asbestos insulation which Scuba and Modie disturbed.

11. Attachments A-6 and A-7 are photographs of the underside of the steam tables on the LeCI serving line. The white plastery-looking line of material is the insulation containing asbestos, and the photograph shows how the material had been chipped away.

12. Upon learning that Scuba and Modie had chipped away at the insulation, LeCI staff had the material tested, and it tested positive for asbestos. Attachment A-8 is the report of the test result received. The report summarized the visual inspection as follows: "Richard A. Orsborn observed approximately 15 linear feet x 3 inches of corrugated insulation around the areas of the warming trays in each of the three units. The three units have stainless steel screwed on covers to prevent access. It is unlikely that there is exposure to the materials while the covers are in place."

13. Upon receipt of the report at A-8, LeCI staff contained the area, kept LeCI inmates and staff away from it, and contacted a team of trained professionals to remove the asbestos. The asbestos in the area has since been removed and the air sample has been tested by professionals and determined to be safe.

14. Although Plaintiff Scuba filed an administrative complaint with the Ohio Environmental Protection Agency alleging lack of safety in the removal of asbestos, Scuba ultimately dismissed his appeal of the agency's ruling against him.

15. Plaintiff Modie told me that he filed the complaints concerning asbestos because he was angry about the loss of his kitchen job.

(Doc. 128, Exh. A).[7]

## II. Summary judgment standard.

A motion for summary judgment should be granted if the evidence submitted to the court

demonstrates that there is no genuine issue as to any material fact and that the movant is entitled

---

[7]By Order of May 20, 2009, the Court struck Exhibits A-1 through A-7 attached to Mr. Westall's Declaration for lack of authentication. (Doc. 156). Therefore, these exhibits may not be considered on summary judgment.

to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Deliberate indifference claim.

After incarceration, only the "unnecessary and wanton" infliction of pain constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Unnecessary and wanton infliction of pain includes those conditions that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). A prisoner may state a cause of action under the Eighth Amendment for involuntary exposure to asbestos which results in a present injury or an unreasonable risk of serious damage to his future health. *See Saaty* v. Morris, 82 F.3d 418, 1996 WL 160803, at *1 (6th Cir. April 4, 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *Patton v. Bechtler,* 9 F.3d 109, 1993 WL 428683, at *3 (6th Cir. Oct. 21, 1993) (unpublished) (citing *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993)). To establish their Eighth Amendment claim regarding exposure to asbestos, plaintiffs must prove the existence of both an objective and subjective component. *See Farmer*, 511 U.S. at 834; *Wilson,* 501 U.S. at 297-300.

The objective component requires that the deprivation alleged be "sufficiently serious." *Farmer*, 511 U.S. at 834, quoting *Wilson*, 501 U.S. at 298. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). *See also Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994). "In the context of a prisoner's claim that prison officials failed to protect him from toxic exposure, 'the Eighth Amendment protects against sufficiently imminent

dangers as well as current unnecessary and wanton infliction of pain and suffering.'" *Pack v. Artuz*, 348 F. Supp.2d 63, 73 (S.D.N.Y. 2004) (quoting *Helling,* 509 U.S. at 34). Plaintiffs may establish the objective component of their Eighth Amendment claim by demonstrating either that they suffered an actual serious injury to their present health or faced "a substantial risk of serious harm" to their future health from involuntary exposure to asbestos. *See Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35. *See also Purser v. Donald*, No. 605cv033, 2006 WL 2850428, at *3 (S. D. Ga. Sept. 28, 2006); *Pack*, 348 F. Supp.2d at 79; *Crawford v. Artuz,* 143 F. Supp.2d 249, 259 (S.D.N.Y. 2001); *Johnson v. DuBois*, 20 F. Supp.2d 138, 140 (D. Mass. 1998); *Gonyer v. McDonald*, 874 F. Supp. 464, 466-67 (D. Mass. 1995).

Under the subjective component, plaintiffs must establish that defendants acted with deliberate indifference to their health or safety. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-303. Plaintiff must present evidence that defendants' conduct amounted to deliberate indifference to a known risk of harm to plaintiff. *Farmer,* 511 U.S. at 837, 842. A prison official may be held liable for denying an inmate humane conditions of confinement only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's health or safety before an Eighth Amendment violation will be found. *Id.* at 835. *See also Whitley*, 475 U.S. at 319. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded

reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844.

In the instant case, plaintiffs fail to establish the objective component of their Eighth Amendment claim. Plaintiffs present no evidence demonstrating that when they were LeCI inmates exposure to asbestos caused them to suffer any actual injury to their health. Despite this Court's discovery orders and extensions of time to supplement their opposition to the motion for summary judgment, plaintiffs have failed to show they presently suffer from an asbestos-related injury.

Nor have plaintiffs shown they face "a substantial risk of serious harm" to their future health from involuntary exposure to asbestos. *See Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35. In this regard, plaintiffs must demonstrate that involuntary exposure to a toxic substance such as asbestos "pose[d] an unreasonable risk of serious damage to [their] future health." *Helling,* 509 U.S. at 35. This requires a court to do "more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the toxin]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36 (emphasis in the original).

Plaintiffs have presented no scientific, statistical, or other evidence demonstrating a likelihood of serious harm to their future health from any involuntary exposure to asbestos while they were LeCI inmates. *Helling*, 509 U.S. at 36. "For exposure to airborne asbestos fibers to create a substantial risk of serious harm . . . the intensity and duration of the exposure must be significant." *Pack*, 348 F. Supp.2d at 80 (citing *Falise v. American Tobacco Co.*, 94 F. Supp.2d

316, 324 (E.D.N.Y. 2000)).  Plaintiffs do not present evidence showing they were exposed to sufficiently intense levels of airborne asbestos fibers to create an unreasonable risk of future harm.  Plaintiffs' arguments to the contrary do not constitute affirmative evidence upon which the Court may rely.  Nor do plaintiffs present evidence that any risk of harm from the exposure to asbestos was so grave that it "violates contemporary standards of decency to expose anyone to such a risk." *Helling*, 509 U.S. at 36.

In the absence of any medical evidence showing the existence of any asbestos-related illness, or scientific or other evidence showing the concentration of asbestos to which plaintiffs were exposed, a reasonable fact-finder could not conclude that the alleged exposure was sufficiently intense to pose an unreasonable risk of serious harm to plaintiffs' immediate or future health.  Thus, plaintiffs have failed to present evidence establishing the objective component of their Eighth Amendment claim under the standards set forth in *Helling v. McKinney*.

In addition, plaintiffs also fail to show the causation element of their Eighth Amendment claim.  To establish their Eighth Amendment claim, plaintiffs must show they were "involuntarily" exposed to asbestos.  Defendants present evidence that the asbestos in the LeCI kitchen was enclosed in a metal casing which posed no harm to anyone until plaintiffs chipped away at the asbestos in order to send samples outside the prison for testing.  In their memorandum in opposition to the motion for summary judgment, plaintiffs argue that asbestos "was falling down into their faces while they were working on kitchen appliances and fixtures." (Doc. 142 at 3).  However, plaintiffs have not submitted any evidence in support of this argument and their unverified statement cannot constitute evidence creating a material issue of

fact as to whether their exposure to asbestos was involuntary. Thus, even if plaintiffs were harmed by exposure to asbestos, they have failed to present evidence that defendants caused such harm.

Plaintiffs also fail to establish the subjective element of their Eighth Amendment claim. To establish that defendants were deliberately indifferent to their health or safety from exposure to asbestos, plaintiffs must present evidence showing the defendants knew plaintiffs faced a substantial risk of serious harm from such exposure, but failed to take reasonable measures to stem the harm resulting from the exposure. As to the 23 remaining defendants, plaintiffs present evidence that only defendant Eckman had knowledge that the material in the LeCI kitchen was asbestos. (Doc. 37, ¶47).[8] Yet, plaintiffs do not present evidence that defendant Eckman knew plaintiffs faced a substantial risk of serious harm from the asbestos. To the contrary, on the date that plaintiff Modie was allegedly informed by Eckman that the material was asbestos, the material had not yet been disturbed by plaintiffs and was still contained in a sealed, encased cabinet posing no harm to plaintiffs. Then, after Eckman allegedly told plaintiff Modie that the insulation was asbestos, plaintiffs did not alert any LeCI officials through the grievance process or otherwise that they suspected a problem, but took it upon themselves to obtain samples of the material and send them out of the institution for testing. This action, in turn, caused a hazmat incident at the federal building in Chicago and alerted LeCI officials of the potential presence of

---

[8]While plaintiffs' verified amended complaint states that defendant Eckman told plaintiff Modie he "*knew* the insulation was asbestos" (Doc. 37, ¶47), Modie's Appeal to the Chief Inspector filed on September 21, 2005 states that Eckman "made a comment stating that he *thought* this insulation just *might be* asbestos." (Doc. 142, attachment). Even crediting plaintiffs' evidence that Eckman "knew" the material to be asbestos, Eckman would still be entitled to summary judgment on plaintiffs' Eighth Amendment claim for the reasons stated above.

asbestos in the kitchen.[9]  At that point, LeCI staff had the material tested and, upon receipt of the results showing the area was positive for asbestos, had the asbestos removed by trained professionals.  Plaintiffs thus fail to meet their burden of showing the defendants knew of and disregarded an excessive risk to plaintiffs' health and safety through exposure to asbestos. Summary judgment should be granted for defendants on plaintiffs' Eighth Amendment deliberate indifference claim.

**IV. Retaliation claims.**

As an initial matter, plaintiffs argue that "there are more than sufficient facts and documents" to support their retaliation claims in this case as evidenced by the Court's denial of defendants' previously filed dispositive motions. (Doc. 142 at 4-5, 13-15).  In ruling on defendants' motion for judgment on the pleadings, the Court declined to dismiss plaintiffs' retaliation claims. (Docs. 83, 96).  At the pleading stage, the Court liberally construed plaintiffs' pro se amended complaint as a whole and determined that plaintiffs alleged sufficient facts to go forward on their retaliation claims. *Id.*

At the summary judgment stage, however, plaintiffs are now required to present evidence establishing each element of their retaliations claims.  Defendants are entitled to summary judgment if plaintiffs fail to make a sufficient showing on the essential elements of their retaliation claims upon which they will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Matsushita Electric Indus. Co ., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 588 (1986).  The Sixth Circuit has interpreted *Celotex* as meaning that "the movant [can]

---

[9]Plaintiffs argue that the defendants caused the hazmat incident by switching the asbestos with a white powder before mailing the letter to the EPA in Chicago. (Doc. 142 at 4).  Plaintiffs have presented no evidence substantiating this argument and do not create an issue of fact necessitating resolution by a jury on this issue.

challenge the opposing party to 'put up or shut up' on a critical issue." *Street v. J.C. Bradford &*
*Co.,* 886 F.2d 1472, 1478 (6th Cir. 1989). If after a sufficient period of discovery, the opposing

party is unable to "put up" credible evidence, by way of affidavit or otherwise that a genuine

issue of fact exists on a critical issue, then summary judgment is appropriate. *Street,* 886 F.2d at

1478. It is under these summary judgment standards the Court now reviews plaintiffs'

retaliation claims.

Prison officials may not retaliate against inmates who have engaged in constitutionally

protected activities or conduct. *See Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429

U.S. 274, 287 (1977); *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988). To establish a claim

for retaliation, plaintiffs must present evidence showing: (1) they engaged in protected conduct;

(2) an adverse action was taken against them that would deter a person of ordinary firmness from

continuing to engage in that conduct; and (3) there is a causal connection between elements one

and two, that is, the adverse action was motivated at least in part by plaintiffs' protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiffs bear the burden of proof on

all three elements of such a claim. *See McElhaney v. Elo*, 230 F.3d 1358 (6th Cir. Sept. 25,

2000) (unpublished), 2000 WL 1477498, at *3; *Watkins v. Phillips*, 194 F.3d 1315 (6th Cir. Sept.

27, 1999) (unpublished), 1999 W.L. 801588, at *3.

In addition, on summary judgment, the Court must "analyze the causation element of a

retaliation claim under the burden-shifting framework announced in *Mount Healthy City School*

*District Board of Education v. Doyle,* 429 U.S. 274 (1977)." *Thomas v. Eby*, 481 F.3d 434, 441-

42 (6th Cir. 2007) (citing *Thaddeus-X,* 175 F.3d at 399). Plaintiffs must show that the exercise

of the protected right was a substantial or motivating factor in the retaliatory conduct. *See Mt.*

*Healthy City School Dist.*, 429 U.S. at 287; *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). "Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment." *Smith*, 250 F.3d at 1038 (citing *Thaddeus-X*, 175 F.3d at 399).

Plaintiffs have identified five instances of alleged retaliation in this case. The first involves plaintiffs' letter containing a sample of asbestos which was mailed to the EPA in Washington on April 3, 2005. (Doc. 37, ¶¶48-54, 106). One week later, plaintiffs were ordered out of the kitchen by defendants Gentry and Conn and returned to their cellblocks. After a search of the kitchen area, defendants Gentry and Conn "wrote an incident report for contraband and forwarded it to then acting head of kitchen security defendant Lt. Buckhalter." (Doc. 37, ¶51). Defendants Casey Barr and defendant Dow were asked about the reason for the search, but gave no response. The following day, defendant Buckhalter "threw the incident report out because he knew it was bogus" and allegedly told plaintiffs to "be careful because 'someone was out to get them.'" (Doc. 37, ¶53). Plaintiffs "had no doubt this was retaliation for forwarding the letter/sample to the EPA." (Doc. 37, ¶54). Plaintiffs have submitted no other evidence in support of this claim of retaliation.

Plaintiffs fail to establish the first element of their retaliation claim. It is undisputed that an inmate has the right to complain or grieve to government officials about the conditions of their confinement. *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). However, that right is not unlimited. "[W]hile a prisoner may have a right to file grievances against prison officials, he or she cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Although

plaintiffs had a right to complain verbally or in writing about their possible exposure to asbestos at LeCI, they had no right to destroy government property or to mail a potentially hazardous substance through the United States mail. *See* Ohio Admin. Code §§ 5120-9-18(F)(2),(3) (prohibiting inmates from sending any letter that constitutes or contains evidence of criminal activity or violations of departmental rules); 5120-9-55 (prohibiting contraband). Thus, the Court concludes that plaintiffs did not engage in protected conduct by mailing a sample of asbestos out of the prison to a government agency.

Plaintiff also fail to establish the causation element of their first retaliation claim. "Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue-that is, the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038 (citing *Thaddeus-X*, 175 F.3d at 399). Plaintiffs have presented no evidence that defendants Gentry or Conn knew of plaintiffs' mailing of the letter to the EPA before they conducted their search of the kitchen and issued the incident report for contraband. Nor is there any evidence that plaintiffs had any previous conversations or dealings with Gentry or Conn about the possibility of asbestos in the kitchen. Unlike the case where a disciplinary charge is directly linked to the protected activity taken by a prisoner and the charged offense consists of the act of engaging in the protected activity, *see Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002), the disciplinary ticket here does not itself establish a causal link. There is nothing to connect the mailing with the issuance of the conduct ticket one week later except temporal proximity. When examining the causation element on summary judgment, however, temporal proximity alone is insufficient to meet the burden of showing the filing of a grievance was a substantial or motivating factor for the adverse

action.  *See Smith v. Campbell,* 250 F.3d 1032, 1038 (6th Cir. 2001) (while temporal proximity between inmate's grievances and decision to transfer him provided some circumstantial support for a causal connection, this evidence alone was not sufficient to meet inmate's burden showing that the filing of grievances was a substantial or motivating factor for his transfer).  Plaintiffs' conclusory allegation they had "no doubt" this was retaliation is insufficient to establish a retaliatory motive in this case.  *See Harbin-Bey v. Rutter,* 420 F.3d 571, 580 (6th Cir. 2005).  Therefore, defendants' motion for summary judgment on plaintiffs' first retaliation claim should be granted.

Plaintiffs' second retaliation claim involves the mailing of a letter to the regional office of the EPA in Chicago. (Doc. 37, ¶¶56-62, 107).  On May 20, 2005, plaintiffs mailed another letter containing a sample of insulation to the Chicago EPA office from LeCI.  On June 3, 2005, plaintiff Scuba was interviewed by a representative from the Department of Homeland Security about a letter containing a white powder.  Plaintiffs allege that defendants Rick Timler, Moore, Link, Case, Casey Barr, and Ed Timler switched the gray fibrous material with a white powder. (Doc. 37, ¶60).  Plaintiff admitted to sending the letter, but states he did so only after "threats" and "intimidation" from defendants Link and Case. (Doc. 37, ¶59).  The "threats" and "intimidation" referred to by plaintiffs consist of the following: While waiting on a conference call with the Department of Homeland Security, plaintiff Scuba had a casual conversation with defendant Case about baseball.  Case allegedly remarked, "well, we all break the law from time to time, some of us just don't get caught." (Doc. 4, Exh. T-14).  Plaintiff Scuba then spoke with defendant Link about his medical condition for which he received medication.  Link allegedly made the comment, "Sounds like some real powerful stuff, you wouldn't want to accidentally get

to[o] much at one time." (Doc. 4, Exh. T-15).  Link then stated he wanted Scuba's "complete cooperation." *Id*.  The conference call was made and plaintiff Scuba admitted to sending the letter with the white powder. *Id.*  Two weeks later, plaintiff Scuba received a fine/ticket from the Department of Homeland Security for a "disturbance," *i.e.*, creating a hazmat incident at the Federal Building in Chicago. (Doc. 37, ¶62; Doc. 4, Exh. G-21).

The gist of plaintiff Scuba's claim is that defendants retaliated against him for reporting a hazardous condition at LeCI by switching the sample of asbestos with a white powder to trump up a criminal charge against him and intimidated him into admitting to that charge.  This claim fails for several reasons.  As discussed above, plaintiff Scuba's right to grieve about his conditions of confinement does not include the right to do so in a manner that violates the law.  Therefore, the mailing of the letter containing a potentially hazardous substance to the EPA in Chicago which created a hazmat incident is not protected activity under the First Amendment.

The claim also fails on the causation element in that plaintiffs present no evidence whatsoever that the sample of insulation in the letter was switched to a white powder by any of the defendants.  Plaintiffs' speculation that the material was switched does not constitute admissible evidence upon which a jury could find for plaintiffs on this issue.  In addition, a reasonable jury could not conclude from the evidence of the comments allegedly made by defendants Link and Case that plaintiff Scuba was threatened and intimidated into admitting to the disturbance charge.  The comments are too innocuous to be reasonably construed as a threat.

Finally, this claim fails as a matter of law because none of the named defendants were the decision-makers of the adverse action in this instance.  Rather, the Department of Homeland Security issued Scuba the fine/ticket for creating a hazmat incident.  *See Smith*, 250 F.3d at 1038

(citing *Shehee v. Luttrell,* 199 F.3d 295, 301 (6th Cir.1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his commissary position, the prison employees cannot be liable on plaintiff's retaliation claim because they were not involved in the decision to terminate the plaintiff); *cf. Bush v. Dictaphone Corp.,* 161 F.3d 363, 369 (6th Cir. 1998) ("Statements by nondecisionmakers ... cannot suffice to satisfy the plaintiff's burden ... of demonstrating animus.") (internal quotations omitted)).  Therefore, defendants are entitled to summary judgment on this claim.

Plaintiffs' third claim of retaliation asserts that after they sent a letter containing a sample of asbestos to Attorney Ray Smith, they were placed in security control and terminated from their jobs. (Doc. 37, ¶¶63-80, 108).  On June 23, 2005, plaintiffs mailed a sample of insulation from the prison to Attorney Smith.  The following morning, they were escorted to the captain's office and questioned about the equipment and accessories in the kitchen maintenance room. Plaintiffs were advised that the material was contraband and they were placed in security control for investigation.  Plaintiffs objected to the action, asserting it was retaliatory.  Both plaintiffs were issued conduct reports for violating the rule against possessing contraband, to wit, a circuit board. (Doc. 4, Exh. H-3, Exh. U-1).  Plaintiff Scuba appeared before the Rules Infraction Board (RIB) and pled guilty. (Doc. 4, Exhs. H-8, H-9).  Scuba was removed from his kitchen job and reassigned to another job. (Doc. 128, Exh. A, ¶7).  Plaintiff Modie was found guilty after an RIB hearing and was terminated from his job.  However, that finding was reversed on appeal and Modie was reinstated to his kitchen job. (Doc. 4, Exh. U-2).

Plaintiffs claim they were issued false conduct reports in retaliation for forwarding a sample of insulation to Attorney Smith, thus violating their "right to redress a grievance against

the government." (Doc. 37, ¶108). As previously discussed, plaintiffs do not possess a right to grieve in a manner that violates prison rules or regulations. The mailing of the sample of asbestos in this instance is not protected activity. Therefore, plaintiffs' third retaliation claim necessarily fails.

In any event, plaintiff Scuba fails to establish the first prong of his retaliation claim because he admitted to violating the institutional rule against possessing contraband and therefore was not engaged in any "protected activity." Since Scuba violated a legitimate prison regulation, "he [has] not engaged in protected conduct, and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395. His post hoc rationalizations for pleading guilty to the rule violation cannot create an issue of fact as the first element of this retaliation claim.

Nor have plaintiffs established the adverse action element of their retaliation claim. While the issuance of a "major misconduct" ticket has been held an adverse action for purposes of a retaliation claim, *Scott v. Churchill,* 377 F.3d 565, 567 (6th Cir. 2004), here plaintiffs admit that the conduct ticket they actually received, possessing a circuit board which is considered contraband, "was a minor offense." (Doc. 37, ¶77). *See Plovie v. Jackson*, No. 2:05cv128, 2006 WL 2850579, at *5 (W.D. Mich. Oct. 3, 2006) ("four minor misconduct tickets could not possibly deter a person from ordinary firmness from engaging in protected conduct such as filing grievances or lawsuits"). Nor have plaintiffs set forth evidence showing they suffered an adverse action by being transferred from their prison kitchen jobs to other prison jobs. *See Jewell v. Leroux*, 20 Fed. Appx. 375, 377-78 (6th Cir. 2001) (finding no adverse action where prisoner alleged he was wrongfully removed from clerk and clerical positions). *See also Smith v. Baugh*, No. 3:05-0860, 2007 WL 3179315, at *6 (M.D. Tenn. Oct. 26, 2007); *Poindexter v.*

*McKee*, No. 5:05cv65, 2006 WL 322480, 2 (W.D. Mich. Feb. 10, 2006). *Cf. Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005) (transfer to another prison resulting in loss of high paying prison job which provided inmate funds necessary to pay attorney for legal challenge to criminal conviction implicated inmate's access to the courts and constituted an adverse action). Plaintiffs have failed to come forward with sufficient evidence to raise a triable issue as to whether they were terminated from their prison jobs in retaliation for his exercise of their First Amendment rights.[10]

In addition, plaintiff's have failed to present evidence that the mailing of the letter to Attorney Smith was a substantial and motivating factor in the subsequent disciplinary action. Again, plaintiffs' evidence of temporal proximity between the mailing of the letter and their placement in security control is insufficient in itself to establish causation. *Smith*, 250 F.3d at 1038. Therefore, summary judgment should be granted for defendants on plaintiffs' third claim of retaliation.

Plaintiffs' fourth claim of retaliation involves a grievance filed by plaintiff Scuba on August 2, 2005 alleging deliberate indifference to the health and safety of other inmates who were ordered to clean and paint the kitchen maintenance room without providing those inmates protective clothing. (Doc. 37, ¶¶72, 86-87, 110; Doc. 4, Exhs. D, F). Scuba alleges that on August 4, 2005, he was taken to the captains office, questioned about the grievance, threatened, and coerced into withdrawing his grievance. (Doc. 37, ¶87). Scuba states he had no option but to

_____

[10]In regards to this claim of retaliation, plaintiffs' amended complaint alleges that defendants Ed Timler and Brown "were composing a fraudulent disciplinary ticket" against plaintiffs for allegedly manufacturing weapons and possessing knives discovered in the kitchen maintenance room "for the primary objective" of increasing plaintiffs' security levels for a transfer out of LeCI. (Doc. 37, ¶¶ 70-71). However, plaintiffs present no evidence that they were ever charged with these offenses or suffered any adverse consequences as a result. These allegations cannot form the basis of a retaliation claim.

withdraw his grievance. *Id*.

Plaintiffs' fourth claim of retaliation fails as a matter of law because Scuba had no right to assist other prisoners with their legal claims unless legal assistance was necessary to vindicate the other prisoners' right of access to the courts. *Thaddeus-X*, 175 F.3d at 395. The Sixth Circuit in *Thaddeus-X* held that inmates do not possess "an independent right to help other inmates with their legal claims." *Id*. In *Thaddeus-X*, the Court determined that a pro se inmate advisor had sufficiently alleged that his legal assistance was necessary by stating in his complaint that the other inmate had no knowledge of the law and was unable to access the court in any meaningful way absent the advisor's assistance. *Id*. In this case, plaintiffs fail to present evidence demonstrating the prisoners who cleaned and painted the maintenance room were not able to pursue legal redress because of a lack of assistance. Therefore, plaintiffs fail to establish they engaged in protected conduct for purposes of their retaliation claim. Summary judgment should be granted for defendants on this retaliation claim.

Plaintiffs' fifth claim of retaliation asserts that after plaintiff Modie was returned to his kitchen job, defendants Moore, Link, Hart, Dow, Eckman, and Crutchfield retaliated against Modie by falsifying a work evaluation report and removing Modie from his job. (Doc. 37, ¶¶99, 113; Doc. 142, Grievance of 9/12/05, Work Evaluation of 9/20/05). The evaluation by defendant Dow noted that Modie's wiring work had been performed in a dangerous fashion and that $4,000 worth of equipment had to be removed. It was also noted that Modie needed to have a job where he could be closely supervised.

Plaintiffs fail to establish the adverse action and causation elements of this retaliation claim. Like their third claim, plaintiffs fail to show that removal from a prison job constitutes an

adverse action. *Jewell*, 20 Fed. Appx. at 377-78. Nor have plaintiffs shown that Modie's

grievance was a substantial and motivating factor for his removal from his kitchen job. Plaintiffs

present no evidence contesting the factual basis underlying his work evaluation. The evidence of

temporal proximity between Modie's grievance and his job evaluation alone is insufficient to

establish the causation element of plaintiffs' retaliation claim. *Smith*, 250 F.3d at 1038. The

mere existence of a scintilla of evidence to support the plaintiffs' position is insufficient; rather,

evidence must exist on which the jury can reasonably find in favor of plaintiffs. *See Morris v.

Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000). Plaintiffs have failed to

produce evidence from which a jury could reasonably determine that Modie's removal from his

kitchen job was in retaliation for his grievance. Accordingly, defendants' motion for summary

judgment on this claim should be granted.

## V. Claims for injunctive relief

To the extent plaintiffs seeks injunctive relief, their claims are moot since they no longer

reside at the Lebanon Correctional Institution. *Abdur-Rahman v. Mich. Dept. of Corrections*, 65

F.3d 489, 491 (6th Cir. 1995). "Mootness results when events occur during the pendency of the

litigation which render the court unable to grant the requested relief." *Berger v. Cuyahoga

County Bar Assn.*, 983 F.2d 718, 724 (6th Cir.), *cert. denied*, 508 U.S. 940 (1993) (citing *Carras

v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986)). Accordingly, the Court is without jurisdiction

to consider plaintiffs' claims for injunctive relief.

## VI. Plaintiffs' claims regarding discovery

In their memorandum in opposition to the motion for summary judgment, plaintiffs allege

that defendants "have provided less than a fourth of the requested discovery" which has inhibited

their ability to respond to the motion for summary judgment. (Doc. 142 at 1). Subsequent to the filing of plaintiffs' memorandum in March 2009, the Court issued several orders dealing with the outstanding discovery issues in this case and twice granted plaintiffs an extension of time to supplement their memorandum in opposition to the motion for summary judgment. (Docs. 158, 164, 167). Despite the rulings granting plaintiffs additional discovery and extensions of time to file a supplemental memorandum, plaintiffs have not filed any additional memoranda opposing the motion for summary judgment. Nor have plaintiffs filed a Rule 56(f) affidavit stating precisely the materials they hope to obtain with further discovery, and exactly how they anticipate those materials would assist in opposing the motion summary judgment. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Plaintiffs' conclusory assertions of the need for additional discovery are not enough to defeat the motion for summary judgment. *Id*.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment be **GRANTED**.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date:  8/13/2009          s/Timothy S. Hogan
                          Timothy S. Hogan
                          United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ROBERT SCOTT SCUBA, et al.,             Case No. 1:06-cv-160
      Plaintiffs

      vs                                (Dlott, J.; Hogan, M.J.)

REGINALD WILKINSON, et al.,
      Defendants

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).